IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JAMES L. PLYMALE                                                                                           PLAINTIFF

vs.                                                  CIVIL NO. 01-2020

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                                               DEFENDANT

**MEMORANDUM OPINION**

James Plymale ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on February 2, 1998, and January 8, 1998, alleging an onset date of January 8, 1998, due to musculoskeletal, respiratory, depression, and other impairments. (Tr. 42-43, 103, 137, 142). An administrative hearing was held on June 29, 1999. (Tr. 59-77). On September 16, 1999, the Administrative Law Judge ("ALJ") issued an unfavorable decision. (Tr. 62-72). Following an appeal to this court, the case was remanded to the Commissioner on September 17, 2001, due to the Commissioner's inability to produce a transcript of the first administrative hearing. (Tr. 78-80). A second hearing was held on July 9, 2002. (Tr. 37-54). Plaintiff was present and represented by counsel.

At the time of the second administrative hearing on September 30, 2003, plaintiff was fifty-two years old and possessed a General Equivalency Diploma. (Tr. 40). The record reflects that he

has past relevant work experience as a rock quarry worker, construction equipment operator, flag person, welder, and truck mechanic. (Tr. 28).

On November 29, 2002, the Administrative Law Judge ("ALJ"), issued a written opinion finding that plaintiff had a severe combination of impairments, but these impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14, 16-19). After determining that plaintiff's subjective complaints were not totally credibly, the ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a range of light work that did not require exposure to unprotected heights, dangerous moving machinery, or involving the operation of motor vehicles. (Tr. 29). As this precluded plaintiff from performing his PRW, with the assistance of a vocational expert, the ALJ determined that plaintiff could still perform work as a hand packager and store laborer. (Tr. 29).

On May 21, 2004, the Appeals Council declined to review this decision. (Tr. 10-11). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 18, 19).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d

964, 966 (8th Cir.2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

3

given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir.1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### Discussion:

After reviewing the evidence of record, the undersigned has noted that the record does not contain a recent RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). The United States Court of Appeals for the Eighth Circuit has observed:

> We recognize the difficulties which come from the type of hearing often necessitated in social security cases where much of the medical evidence is submitted in report form. Written medical reports seldom provide a medical witness the opportunity to fully develop the overall physical or mental condition of a claimant and therefore the evidence is sometimes cryptic and without sufficient detail or opinion for a trier of fact to be able to reach a fair conclusion.[1]
> Although the law recognizes that written medical reports are admissible in social security hearings and may be the sole basis for substantial evidence to support a

---

[1] It might be advisable for the [Commissioner] to submit a short set of interrogatories to examining physicians which will require the physician not only to set forth his full detailed opinion as to the extent of disability, but also whether in his opinion the claimant is disabled from pursuing substantial gainful activity or, in a widow's case, any gainful activity within the relevant time period of disability. We note Health, Education and Welfare medical advisors utilize forms in giving their opinions. (footnote in original).

social security determination[2] agency adjudicators and courts cannot ignore their inadequacies. Experience within our adversary trial system has long demonstrated that naked conclusions and opinions of medical experts are often subject to reserved and unwritten qualifications requiring searching evaluation. Medical diagnosis is seldom an exact science. However, since expediency is deemed an important consideration in processing social security claims[3] the Secretary and reviewing court must closely scrutinize the evidence to avoid miscarriages of justice. For the right to disability payments is a significant one to the applicant; it may well constitute the only ray of hope left to him.

*Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974).

In the present case, the most recent RFC assessment of record is dated August 1998. Since that time, plaintiff has undergone additional medical treatment for his impairments. Specifically, plaintiff has been treated as follows.

On March 15, 1999, plaintiff was admitted to the hospital due to epigastric pain, nausea, and hematemesis.[4] (Tr. 307). He reported that, at times, he would have to stop eating to go to the bathroom and vomit. After waiting approximately two hours, he could then resume his meal without a problem. On examination, Dr. Eduardo Demondesert noted tenderness in the epigastric area to deep palpation without any guarding or rebound. (Tr. 308). Because plaintiff's laboratory results were within normal limits, Dr. Demondesert diagnosed plaintiff with a history of perforated peptic ulcer and possible dumping syndrome. He then opted to evaluate plaintiff endoscopically for any

---

[2] See *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). (footnote in original).

[3] See *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). (footnote in original).

[4] Plaintiff was hospitalized in March 1997, due to a benign gastric ulcer perforating the tail of his pancreas and spleen. (Tr. 197-198). He presented at the Emergency Room ("ER") with upper gastrointestinal bleeding. As a result, plaintiff underwent esophagogastrectomy with distal pancreatectomy, splenectomy, vagotomy, pyloroplasty, and cholecystectomy. (Tr. 197-198).

recurrence of his peptic ulcer disease. (Tr. 308). The upper endoscopy revealed status post esophagogastrectomy with nodularity and post surgical changes at the gastroesophageal junction. (Tr. 306). Biopsies obtained from the gastroesophageal junction revealed mild gastritis. (Tr. 306). His medications were noted to be Hydrocodone, Ultram, and Prilosec.

On March 25, 1999, plaintiff again complained of abdominal pain and was vomiting blood. (Tr. 311). For this, he was prescribed Ultram. (Tr. 311). On June 15, 1999, Dr. Govinda Lohani examined plaintiff due to back pain and abdominal discomfort. (Tr. 297). He was advised to take Phenergan as needed. Plaintiff was also taking Prilosec and Celexa daily. (Tr. 297).

On April 30, 1999, plaintiff was admitted to the hospital for evaluation of abdominal pain. (Tr. 310). An upper endoscopy revealed post-surgical changes in the abdomen. Dr. Demondesert noted that claimant reported continuing to experience nausea two or three time per week and that his gastric test indicated that he was still producing stomach acid, despite his previous surgery. (Tr. 309). Dr. Demondesert prescribed Phenergan and Prilosec. He also advised plaintiff to eat smaller meals. (Tr. 310).

On January 18, 2000, plaintiff was examined by Dr. Karen Perry. (Tr. 313-314). He complained of headaches. On examination, his deep tendon reflexes were diminished in the right biceps, suggesting C6 nerve root dysfunction. He also had some loss of coordination in his right hand. Dr. Perry noted that she would wait for the arrival of plaintiff's medical records before proceeding with treatment. However, in the meantime, she referred plaintiff for an MRI of the brain and neck and prescribed Soma and Midrin. Dr. Perry also concluded that plaintiff was probably unable to work and should be considered for disability. (Tr. 314).

6

Cervical x-rays dated January 26, 2000, showed mild disc space narrowing at the C6-7 levels and a possible anatomic variant at the base of the odontoid. (Tr. 316). In addition, a cervical MRI showed a very small disc protrusion at the C5-6 level and a small protrusion at the C6-7 level with no significant nerve root compression. (Tr. 318).

In addition, on January 26, 2000, an MRI of plaintiff's brain revealed a 1 centimeter lesion in the subcortical right temporal region, just above the occipital horn of the lateral ventricle and just peripheral to the right thalamus with characteristics of a cavernous angioma, as well as a scalp lesion adjacent to the outer table on the skull. (Tr. 315). As such, a follow-up MRI/MRA was recommended.

A CT scan of plaintiff's lumbar and cervical spine taken on March 10, 2000, revealed bulging of the L4-5 disc with amputation and impingement of the left nerve root at that level, canal stenosis related to prominent ligamentum flava in the bulging disc, and osteophyte formation at the C5-6 and C6-7 levels without nerve root compression or disc herniation. (Tr. 320).

On September 11, 2001, plaintiff was admitted to the Mena Medical Center with complaints of right shoulder pain. (Tr. 326-327). Dr. Eugene Pontecorvo performed arthroscopy of the right shoulder and found a rotator cuff tear with a prominent undersurface of the clavicle and acromioclavicular arthritis. He repaired the rotator cuff and removed the distal clavicle. (Tr. 326-327).

On November 23, 2001, Dr. Jeff Henning noted that plaintiff's MRI revealed a stable scalp lesion and stable-appearing right temporal lesion that might represent a cavernous angioma, as well as left maxillary sinus disease with mucosal thickening. (Tr. 324-325). An MRA revealed no evidence for aneurysm and no significant narrowing of the vascular structures. (Tr. 324). Then, on

7

May 16, 2002, plaintiff was again prescribed Celexa for depression, Phenergan for chronic epigastric pain, and Darvocet for chronic lower back pain. (Tr. 321).

Given the fact that this evidence was not contained in the record at the time of the most recent RFC assessment, we believe that remand is necessary. We also find that remand is necessary to allow the ALJ to obtain an RFC assessment from plaintiff's treating physicians. No such assessment is contained in the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). Therefore, based on the current evidence of record, we do not find substantial evidence supporting the ALJ's RFC determination.

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

## **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and, therefore, the denial of benefits to the plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

ENTERED this 31st day of August 2005.

    /s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)